**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JEREMEY WAYNE R., | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| vs. | )    Case No. 19-CV-362-JFJ |
| | ) |
| ANDREW M. SAUL, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
|     **Defendant.** | ) |

**OPINION AND ORDER**

Plaintiff Jeremey Wayne R. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying his claims for disability benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.      General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an

"acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the

2

decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 39-year-old male, protectively applied for Title II disability insurance benefits and Title XVI supplemental security income benefits on January 18, 2016, alleging a disability onset date of July 1, 2014. R. 17, 215-218, 219-233. Plaintiff claimed he was unable to work due to conditions including post-traumatic stress disorder ("PTSD"), bipolar, social anxiety, depression, and tremors. R. 240. Plaintiff's claims for benefits were denied initially on May 4, 2016, and on reconsideration on August 3, 2016. R. 49-100. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on May 23, 2018. R. 34-48. The ALJ issued a decision on June 26, 2018, denying benefits and finding Plaintiff not disabled because he was able to perform other jobs existing in the national economy. R. 14-28. The Appeals Council denied review, and Plaintiff appealed. R. 1-5; ECF No. 2.

The ALJ determined that Plaintiff met the insured requirements for Title II benefits through December 31, 2017. R. 19. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 1, 2014. R. 19. At step two, the ALJ found

that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; obesity; PTSD; bipolar disorder; generalized anxiety; panic disorder; and substance abuse including alcohol and methamphetamine in recent remission. R. 20. The ALJ also found Plaintiff's history of hypertension was a non-severe impairment, and his reports of "amnestic/dissociative episodes and seizures or tremors" were medically non-determinable. *Id.* At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 20-22. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had mild limitations in the area of understanding, remembering, or applying information, and moderate limitations in the three areas of adapting or managing oneself; interacting with others; and concentrating, persisting, or maintaining pace. R. 21.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform a full range of medium work except as follows:

> Pushing and pulling with upper and lower extremities is consistent with lifting capabilities. Due to mental impairments, the claimant is capable of doing only unskilled work consisting of simple and routine tasks with routine supervision that require only that he be able to understand, remember and carry out simple instructions. The claimant can maintain concentration and persist for two-hour periods during the workday with normally scheduled work breaks between periods. This persistence and concentration can continue over a normal 40-hour workweek. The claimant can relate to supervisors and coworkers on a superficial and work related basis, and can adapt to a work situation. He can have occasional contact with coworkers and no contact with the general public meaning that interaction with the general public is not part of his job duties, any contact with the public would be incidental and superficial.

R. 22. At step four, the ALJ found that Plaintiff was unable to perform past relevant work. R. 26. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other unskilled medium, light, and sedentary work, such as Hand Packer (unskilled, medium, SVP 2), Laundry Sorter (unskilled, light, SVP 2), and Assembler (unskilled,

sedentary, SVP 2). R. 27-28. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. R. 28. Accordingly, the ALJ concluded Plaintiff was not disabled.

### III. Issues

Plaintiff raises two, related points of error in his challenge to the denial of benefits: (1) the ALJ's mental RFC findings were not supported by substantial evidence, because he failed to properly evaluate the reviewing agency psychological opinion evidence; and (2) because of the ALJ's error in evaluating the agency psychologists' opinions, the hypothetical question posed to the VE failed to account for Plaintiff's mental limitations consistent with the agency reviewers' opinion. ECF No. 14. Because the Court finds no error in the ALJ's evaluation of Plaintiff's mental impairments, the Court does not address the second point of error.

### IV. Analysis – ALJ's Mental RFC Was Supported by Substantial Evidence, and Proper Legal Standards Were Applied

Plaintiff contends the ALJ's mental RFC was unsupported by substantial evidence, because he improperly evaluated the opinions of agency psychological reviewer Diane Hyde, Ph.D. *See* R. 51-72. In May 2016, Dr. Hyde reviewed Plaintiff's case and concluded that he could perform simple tasks with routine supervision; could relate to supervisors and peers on a superficial work basis; cannot relate to the general public; and could adapt to a work situation. R. 59, 70. In reaching this mental RFC conclusion, Dr. Hyde completed the mental RFC worksheet, indicating he was "markedly limited" in the mental areas of "ability to understand and remember detailed instructions," "ability to carry out detailed instructions," and "ability to interact appropriately with the general public." R. 58-59, 69. In evaluating the "paragraph B" criteria of the appropriate mental listings, Dr. Hyde found Plaintiff had "moderate" limitations in the three areas of (1) restriction of activities of daily living, (2) difficulties in maintaining social functioning, and (3)

5

difficulties in maintaining concentration, persistence, or pace; and he experienced "one or two" repeated episodes of decompensation, each of extended duration. R. 56, 67.

In the decision, the ALJ assessed Dr. Hyde's opinion, as well as the identical opinion of reconsideration psychological reviewer Charlotte Ducote, Ph.D. R. 26. He noted their mental RFC opinions, and he explained that they issued their findings in compliance with mental health evaluation standards no longer in effect as of January 17, 2017. *Id.* The ALJ gave the agency psychologists' findings "diminished weight," because of their use of outdated mental health evaluative standards. *Id.* Nonetheless, the ALJ also accorded their opinions "substantial weight," because "they are consistent with the longitudinal medical evidence." The ALJ further assigned a mental RFC that largely matches the agency reviewers' opinions. *See* R. 22, 59, 70, 85, 98.

Plaintiff alleges the ALJ gave improper consideration to Dr. Hyde's mental findings, citing several errors.

### A. Medical Evidence Regarding Mental Condition

Plaintiff argues the ALJ failed to account for Dr. Hyde's finding that he was "markedly" limited in the ability to perform detailed tasks, instead making "conclusory findings" at step three that Plaintiff had only mild limitations in the "paragraph B" area of understanding, remembering, or applying information and moderate limitations in the three "paragraph B" areas of adapting or managing oneself; interacting with others; and concentrating, persisting, or maintaining pace. ECF No. 14 at 7. *See* R. 21, 58, 69. He contends "other medical evidence" shows Plaintiff's concentration and memory were poor, referring to August 2016 behavioral health notes from Todd Pogue, M.D., that Plaintiff's depression and anxiety were capable of causing poor concentration

and memory (R. 493-496), and Global Assessment of Functioning ("GAF") scores of 30 and 40 in November 2015 (R. 330, 355).[1]

Plaintiff's argument fails. At step three and in determining the mental RFC, the ALJ extensively discussed Plaintiff's mental health treatment history. *See* R. 21, 24, 25. At step three, the ALJ noted Plaintiff's mental status at various clinical visits between November 2015 and December 2017, including the August 2016 visit with Dr. Pogue. *See* R. 21 (citing R. 493). In addressing the RFC, the ALJ again summarized the August 2016 visit with Dr. Pogue, noting Dr. Pogue's statement that "depression and anxiety could cause poor concentration and memory." R. 25 (citing R. 493). Regarding Plaintiff's mental RFC, the ALJ found that Plaintiff was not as limited as he claimed, showing many instances of minimal treatment compliance and displays of manipulative behavior. *See* R. 21, 24, 25, 432, 437. The ALJ further noted that Charles Van Tuyl, M.D., Plaintiff's treating psychiatrist, estimated Plaintiff's intellectual functioning was in the normal range, with intact memory functioning, and that there was no evidence that Dr. Van Tuyl's opinion had changed during Plaintiff's course of treatment. R. 24. Substantial evidence supports the ALJ's mental findings at step three and in determining the RFC, and Plaintiff points to no actual conflict between the mental RFC and Dr. Hyde's opinion or the cited evidence.

As for Plaintiff's GAF scores, the ALJ noted the GAF score of 40 at his hospital discharge in November 2015. R. 24 (citing R. 330). Moreover, the ALJ expressly assigned "little weight"

---

[1] GAF is a subjective determination, based on a scale of 1 to 100, of the clinician's judgment of the patient's overall level of functioning. *Langley v. Barnhart,* 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004) (quotation omitted). The American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000) ("DSM-IV") explains that a GAF score between 21 and 30 indicates serious impairments in communication or judgment, or an inability to function in almost all areas, such as by staying in bed all day or having no job, home, or friends. *See Cunha v. Colvin*, 2013 WL 12330031, at *3 n.8 (D.N.M. May 8, 2003) (citing DSM-IV at 34). A GAF score between 31 and 40 indicates major impairments in several areas, such as work or school, family relations, judgment, thinking, or mood. *Id.* at *2 n.3 (citing DSM-IV at 34).

to Plaintiff's GAF scores, because "they are of little help in the determination of the claimant's [RFC]." R. 26. Specifically, the ALJ explained GAF scores "represent a particular clinician's subjective evaluation at a single point in time and do not provide a function-by-function assessment of the claimant's ability to perform specific work-related activities." *Id.* He also explained, that, in the 2013 edition of the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* manual ("DSM-V), use of the GAF score was dropped for several reasons, including "its 'conceptual lack of clarity' and 'questionable psychometrics in routine practice.'" *Id.* (quoting DSM-V, p. 16). Plaintiff disregards the ALJ's express weighing of the GAF scores and legitimate reasons for assigning them "little weight."

### B. Weighing of Dr. Hyde's Opinions

Plaintiff argues the ALJ improperly assigned "diminished weight" to Dr. Hyde's findings, because Dr. Hyde performed her assessment using an evaluative process no longer in effect. Plaintiff argues that, although the evaluative process for mental health claims changed after Dr. Hyde issued her opinion, the substantive criteria for determining mental health impairments did not change. Plaintiff contends it was not legitimate for the ALJ to assign diminished weight to Dr. Hyde's opinion based on the changed criteria, because the ALJ's finding contradicts this Court's ruling in *Marilyn E. D. v. Saul*, No. 18-CV-178-JED-JFJ, ECF No. 27 (N.D. Okla. Sept. 17, 2019), *report and recommendation adopted*, ECF No. 28 (N.D. Okla. Dec. 16, 2019). Plaintiff further argues the ALJ's finding violates the principles set forth in *Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007).

Plaintiff's argument is unpersuasive for several reasons. First, Plaintiff appears to labor under a misunderstanding that the ALJ rejected Dr. Hyde's opinions. To the contrary, the ALJ assigned her opinions "substantial weight," because "they are consistent with the longitudinal medical evidence." R. 26. Moreover, the ALJ largely adopted Dr. Hyde's mental RFC opinions,

8

including the opinions that Plaintiff can perform simple tasks with routine supervisions, can relate to supervisors and peers on a superficial work basis, cannot relate to the general public, and can adapt to a work situation. *See* R. 22, 59, 70. This opinion is fully consistent with Dr. Hyde's opinion in Section I of the mental RFC worksheet that he is markedly limited in the ability to understand, remember, and carry out detailed instructions but not significantly limited in the ability to understand, remember, and carry out very short and simple instructions. *See* R. 58, 69.

Second, Plaintiff's reliance on this Court's findings in *Marilyn E. D.* is misplaced. In *Marilyn E. D.*, the claimant argued that, although the mental health evaluation criteria changed while her case remained pending, the former mental evaluation criteria should be applied to her claim. The claimant argued the new regulation should not have a "retroactive effect" on her claim, because she had a reasonable expectation that her claim would be evaluated under the regulations in effect when she filed her claim, and the ALJ's application of the revised mental health criteria would seriously impair the rights she held when she applied for disability benefits. *Marilyn E. D.*, No. 4:18-CV-178, ECF No. 27, at 12. The Court rejected the claimant's argument, finding that application of the revised mental health listings did not have a "retroactive effect" on the claimant's case. *Id.* at 15. The Court reasoned that the relevant "act" to which legal consequences attached was the agency's application of the five-step procedure, rather than the claimant's filing of a disability claim, and the claimant had no "substantive right" to benefits when filing a claim. *Id.* at 15-16. The Court cannot discern, and Plaintiff does not clearly explain, how the ruling in *Marilyn E. D.* supports Plaintiff's position here. Rather, *Marilyn E. D.* supports the ALJ's application of the revised mental health criteria to Plaintiff's case. To the extent Dr. Hyde's findings diverged from the revised mental health criteria, the ALJ appropriately assigned them diminished weight.

Third, *Haga* does not support Plaintiff's position that the ALJ erred in evaluating Dr. Hyde's opinion. In *Haga*, the Tenth Circuit concluded that an ALJ must explain his reasons for

9

rejecting some restrictions in a medical opinion while adopting others, and he may not "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." 482 F.3d at 1208. Here, the ALJ explained his reasons for assigning diminished weight to Dr. Hyde's opinions. Specifically, he explained that Dr. Hyde used mental health evaluation criteria that were no longer effective, i.e., the "paragraph B" criteria in evaluating mental health listings. R. 26. While the ALJ could have explained himself more clearly, it is clear enough that the ALJ afforded "diminished weight" to the "paragraph B" findings in Dr. Hyde's opinion, which changed under the new Regulations, and "substantial weight" to Dr. Hyde's narrative mental RFC, which the ALJ largely adopted into his RFC, because it was consistent with the longitudinal medical evidence. *Id.* The Court identifies no error.[2]

### C. Dr. Hyde's Section I Worksheet Opinions

Finally, Plaintiff appears to argue the ALJ was required to expressly adopt Dr. Hyde's limitations in Section I of the mental RFC assessment form. This argument fails. The mental limitation ratings in Section I (summary conclusions) do not themselves constitute the RFC, as agency guidance explains. *See* SSA Program Operations Manual System ("POMS") DI § 24510.060B.2 (explaining that the categorical assessments in Section I of the mental RFC

---

[2] Plaintiff suggests briefly that the ALJ was obligated to develop the record by obtaining a new agency reviewer opinion pursuant to the revised regulations, ordering a consultative exam, or obtaining medical testimony regarding Plaintiff's mental condition. ECF No. 14 at 7-8. To the extent Plaintiff is attempting to raise this as an argument, the Court rejects it. The ALJ has a "basic obligation" in every social security case to develop the record consistent with the issues raised. *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (quotation omitted). However, the ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning"; instead, the "standard is one of reasonable good judgment." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997). Here, Plaintiff points to no part of the record indicating that further development of the record with additional opinion or examination evidence was required. *See* 20 C.F.R. § 404.1527(d)(2) (explaining that, while an ALJ considers medical opinions in assessing RFC, the final responsibility for determining an RFC is reserved to the ALJ). *See generally Cowan*, 552 F.3d at 1187 (finding "no need" to develop record with consultative exam because "sufficient information existed" for ALJ to make disability determination).

assessment are "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and do[ ] not constitute the RFC assessment"). "It is the narrative written by the psychiatrist or psychologist in section III [of the agency mental impairment evaluation form] that adjudicators are to use as the assessment of RFC." POMS DI 25020.010B.1. Dr. Hyde translated her summary conclusions from Section I – including finding that Plaintiff was "markedly limited" in the ability to understand, remember, and carry out detailed instructions – into an actual mental RFC in Section III that included limitations of performing simple tasks with routine supervision. R. 58-59, 69-70. The ALJ was not required to adopt the Section I findings expressly, and the ALJ adequately incorporated Dr. Hyde's mental RFC narrative into the RFC, which in turn incorporated her Section I summary findings. *See Nelson v. Colvin*, 655 F. App'x 626, 628-29 (10th Cir. 2016) (rejecting claimant's argument that ALJ was required to note Section I moderate and marked limitations, where agency doctor's "Section III narrative adequately captured the limitations she found in Section I").

Plaintiff further takes issue with the ALJ's RFC finding that Plaintiff "can maintain concentration and persist for two-hour periods during the workday with normally scheduled work breaks between periods" (R. 22), arguing that it conflicts with Dr. Hyde's opinions that Plaintiff had a "moderate" limitation in concentration and memory in the "paragraph B" assessment (R. 56, 67) and was "markedly limited" in ability to perform detailed tasks (R. 58, 69). *See* ECF No. 14 at 7-8.

The Court identifies no such conflict. As explained above, the ALJ appropriately assigned diminished weight to Dr. Hyde's "paragraph B" findings, because of the change in regulatory criteria. Moreover, the ALJ accommodated Plaintiff's moderate difficulties in concentration by limiting Plaintiff two-hour periods of concentration and persistence, and by limiting him to unskilled work, which does not require concentration or attention for more than two hours at a

11

time. R. 22, 43. *See* POMS DI § 25020.010(B)(3) (unskilled work requires claimant to "maintain attention for extended periods of 2-hour segments (concentration is not critical)"). The ALJ also limited Plaintiff to only simple and routine tasks, with routine supervision, that require only that he be able to understand, remember, and carry out simple instructions; relating with supervisors and coworkers on only a superficial and work related basis; occasional contact with coworkers; and no contact with the general public, with any contact with the public being incidental and superficial. 22, 43. In reaching this determination, the ALJ reviewed numerous records discussing Plaintiff's mental condition, and he connected those records to his RFC findings. R. 22-26. Plaintiff fails to explain clearly how the ALJ's RFC conflicts with any of Dr. Hyde's opinions, and the Court rejects his vague argument that any conflicts exist.

**V.   Conclusion**

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFIRMED.**

**SO ORDERED** this 16th day of November, 2020.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**